UNITED STATES DISTRICT COURT                                  b
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| CLYDELL CUMMINGS, | CIVIL ACTION NO. 5:13-CV-02935 |
| VERSUS | JUDGE HICKS |
| N. BURL CAIN | MAGISTRATE JUDGE PEREZ-MONTES |

## REPORT AND RECOMMENDATION

### I.   Background

Before the Court is a petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 by pro se petitioner Clydell Cummings ("Cummings").   Cummings contests his 2009 conviction by a jury in the Louisiana First Judicial District Court, in Caddo Parish,  on one count of possession of cocaine with intent to distribute, and the finding that he is a fourth felony offender.  See State v. Cummings, 46,038 (La. App. 2d Cir. 1/26/11) 57 So.3d 499, writ den., 2011-0341 (La. 6/17/11), 63 So.3d 1037. Cummings was sentenced to life imprisonment.  Cummings is presently incarcerated in the Louisiana State Penitentiary in Angola, Louisiana.

Cummings raises the following issues:

1.   Whether the state courts used an unreasonable application of clearly established federal law when reviewing Cummings's insufficiency of evidence claim?

2.  Whether the sentence imposed violates the Eighth Amendment of the United States Constitution, as constitutionally excessive under La. R.S. 15:529.1?

3.  Whether Cummings's trial counsel was ineffective and the conviction was obtained in violation of the Sixth Amendment?

4. Whether Cummings's conviction was obtained in violation of the Fifth and Fourteenth Amendments' rights to due process and a fair trial?

The Respondent answered the petition (Doc. 13).  Cummings's habeas petition is now before the Court for disposition.

## II.   Underlying Facts.

The facts of Cummings's case as set forth by the Louisiana Second Circuit Court of Appeal, as Cummings, 57 So.3d at 502, are as follows:

> On October 7, 2008, law enforcement officials in Shreveport received information from a confidential informant that cocaine was being sold from Room 25 of the Levingston Motel. A search warrant was obtained for that room. At approximately 11:00 p.m., members of the street level interdiction unit, a team composed of Caddo Sheriff's deputies and Shreveport Police officers, arrived on the scene to execute the warrant. Three officers used a battering ram to knock down the door to the room. One officer noticed a man jumping out the back window of the room. Another officer ran behind the building and found the defendant hiding under it.
>
> In the motel room, officers found a rock of crack cocaine on a plate with a razor blade. In a small purse, officers found 142 rocks of crack cocaine, individually packaged. The total weight of the cocaine found in the room was 25 grams. In a search incident to arrest, officers found more than $1,000 in small bills in the defendant's front pockets.
>
> The defendant was charged by bill of information with possession of a Schedule II controlled dangerous substance, cocaine, with intent to distribute. The defendant was tried by jury and convicted as charged in a unanimous jury verdict. Motions for a new trial and for a post verdict judgment of acquittal were denied by the trial court on December 18, 2009.
>
> The defendant was charged with being a fourth felony offender. On February 3, 2010, a hearing was held; the defendant was adjudicated a fourth felony offender and sentenced to life imprisonment.

## III.   Rule 8(a)

The Court is able to resolve this habeas corpus petition without the necessity of an evidentiary hearing because there is no genuine issue of material fact relevant to Cummings's claims, and the state court records provide the required and adequate

factual basis.  See Moya v. Estelle, 696 F.2d 329, 332-33 (5th Cir. 1983); Easter v. Estelle, 609 F.2d 756, 761 (5th Cir. 1980); Habeas Corpus Rule 8(a).

IV.   **Standard of Review**

     An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall be considered only on the ground that he is in custody in violation of the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2254(a).

     Under 28 U.S.C. § 2254, habeas relief is not available to a state prisoner with respect to a claim that was adjudicated on the merits in the State court proceedings unless the adjudication of the claim: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  Therefore, pure questions of law and mixed questions of law and fact are reviewed under § 2254 (d)(1), and questions of fact are reviewed under § 2254(d)(2).  See Martin v. Cain, 246 F.3d 471, 475-76 (5th Cir. 2001), cert. den., 534 U.S. 885 (2001).

     A state court decision is contrary to a clearly established Supreme Court precedent if the state court applies a rule that contradicts the governing law set forth in Supreme Court cases, or confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a result different from Supreme Court precedent.  A state court decision falls within

the unreasonable application clause when it unreasonably applies Supreme Court precedent to the facts.  See Martin, 246 F.3d at 476, and cases cited therein.

V.    **Law and Analysis**

    A.    **There is sufficient evidence to support Cummings's conviction for possession with intent to distribute cocaine.**

First, Cummings contends the state courts failed to apply the standard set forth in Jackson v. Virginia, 443 U.S. 307 (1979), when reviewing Cummings's insufficiency of evidence claim, and thus erred in finding there was sufficient evidence of constructive possession to support his conviction.  Cummings argues that, to support a conviction for possession of a controlled dangerous substance, the State must prove the defendant was in possession of the illegal drug and knowingly possessed the drug.

    1.    **The law of Jackson v. Virginia.**

A reviewing court confronted with a claim of insufficient evidence must, after viewing all the evidence in the light most favorable to the conviction (prosecution), determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  See Cupit v. Whitley, 28 F.2d 532, 542 (5th Cir. 1994), cert. Den., 513 U.S. 1163 (1995) (citing Jackson v. Virginia, 443 U.S. 307 (1979)).

Habeas relief on a claim of insufficient evidence is appropriate only if it is found that, upon the record evidence adduced at trial, no rational trier of fact could have found proof of guilt beyond a reasonable doubt.  See West v. Johnson, 92 F.3d 1385 (5th Cir. 1996), cert. den., 520 U.S. 1242 (1997) (citing Jackson, 443 U.S. at 322-26).

To apply this standard, the court looks to elements of the offense as defined by state substantive law.  See Donahue v. Cain, 231 F.3d 1000, 1004 (5th Cir. 2001).

A jury's determination of witness credibility, the inferences made on the evidence, and the jury's reasonable construction of the evidence is entitled to substantial deference by a reviewing court.  See Marshall v. Lonberger, 459 U.S. 422, 433-35 (1983).  In addition, where there has been a thoughtful review of the sufficiency of the evidence by a state appellate court, that court's findings are entitled to great weight.  See Jackson, 443 U.S. at 322 n.15.

Possession of a controlled substance with intent to distribute is proven by showing, beyond a reasonable doubt, that defendant possessed the drug with the intent to distribute it.  The state is not required to prove actual possession, but needs only to show the defendant exercised dominion or control over the illegal substance.  See State v. Jordan, 489 So.2d 994, 996 (La. App. 1st Cir. 1986) (citing State v. Walker, 369 So.2d 1345 (La. 1979)).  In order to prove the element of intent to distribute, the state must prove defendant's subjective specific intent to possess in order to distribute.  See Jordan, 489 So.2d at 996 (citing State v. Elzie, 343 So.2d 712 (La. 1977)).

The intent to distribute may be inferred from the surrounding circumstances. The trier of fact may look to how the substance was packaged, the quantity of the substance seized, and the presence of scales or other paraphernalia for drug use or packaging.  See Jordan, 489 So.2d at 997 (citing State v. Trahan, 425 So.2d 1222 (La. 1983)).  Testimony of the street value and dosage units of the narcotic is also relevant.

See Jordan, 489 So.2d at 997 (citing State v. Tornabene, 337 So.2d 214 (La. 1976)). The presence of large sums of cash has also been considered as circumstantial evidence of intent.  See Jordan, 489 So.2d at 997.

### 2. The trial testimony.

At trial, Agent Witham testified that Cummings was arrested because 34.3 grams of individually packaged crack cocaine were found in his motel room (in a search pursuant to a search warrant), and because there was an outstanding warrant for his arrest (Doc. 13-4, pp. 53-55/172).  There were about 8.3 grams of crack cocaine and two razor blades on a plate in Cummings's room, which indicated someone had been distributing crack from that room (Doc. 13-4, pp. 48-49, 51, 54/172).  There was also a large black change purse/cigarette pouch on the floor beside the bed that had 142 individually packaged "dime bags" of crack cocaine (Doc. 13-4, pp. 51, 71/172). The dime bags weighed, altogether, 26 grams (Doc. 13-4, p. 51/172).  The officers found a total of 34.3 grams of crack cocaine in the motel room (Doc. 13-1, p. 45/172). Deputy Witham testified that Cummings told him he had not realized he had that much crack cocaine in his room (Doc. 13-4, p. 8/172).  Deputy Witham also testified that Cummings said he would give him information if he visited him (Doc. 13-1, p. 14/172).  Deputy Witham testified that no one else was in Cummings's room (Doc. 13-4, p. 56/172).

Agent Parker testified that, when they entered Cummings' room to execute the search warrant, Cummings jumped out of the window, which was more than one story

up (Doc. 13-4, pp. 105-6/162).  Agent Parker testified that he and Agent McKenna caught, cuffed, and Mirandized Cummings (Doc. 13-4, p. 108/172).

Bruce Stentz, a forensic chemist, testified that the drugs seized from Cummings's motel room were cocaine (Doc. 13-4, p. 131/172).

Lieutenant Townley–an expert in the area of possession with intent to distribute narcotics, and in sales, packaging, and distribution of narcotics–testified that $ 1054, in small denomination bills, was seized from Cummings's person (Doc. 13-4, pp. 155, 158, 162/172).  Lt. Townley also testified that the cocaine seized from Cummings's room was packaged for sale in "dime bags," rather than for personal use (Doc. 13-4, pp. 159-60/172).  Lt. Townley testified they did not find a crack pipe or other smoking paraphernalia (Doc. 13-3, p. 161/172).  The large amount of cocaine found on the plate, together with the razors for cutting it up, indicated possession with intent to distribute (Doc. 13-4, p. 167/172).  Lt. Townley testified that the 142 dime bags of cocaine also indicated possession with intent to distribute.

Agent McKenna testified that he was third to enter the motel room that was to be searched, but that he left right away to find Cummings, who had jumped out of the window in the room (Doc. 13-5, p. 17/242).  McKenna found Cummings hiding underneath the building in the dirt, and arrested and handcuffed Cummings (Doc. 13-5, pp. 16-19/172).

Agent Greg Walker testified that he helped search Cummings and the room (Doc. 13-5, pp. 41-42/242).  Walker found money in Cummings's front pockets: 1-$50, 37-$20s, 12-$10s, 24-$5s, and  34-$1s (Doc. 13-5, pp. 44-46/242).

Isabel Smith testified that she had known Cummings three to four years and had an intimate relationship with him (Doc. 13-5, pp. 127-28/242). Smith had always met Cummings at a motel, and had gone to the Levingston Motel with him (Doc. 13-5, p. 128/242). Smith met Cummings at the Levingston on the day he was arrested (Doc. 13-5, p. 141/242), but was not with him when he was arrested (Doc. 13-5, p. 144/242). Smith testified that the 142 dime bags of cocaine and the cocaine on the plate found in Cummings's motel room were not hers (Doc. 13-5, p. 143/242). Smith also testified that she has never seen Cummings with drugs (Doc. 13-5, p. 154/242).

Lieutenant Piggs testified that Smith had several pay stubs and pawn shop receipts in his wallet.

Fred King, an investigator, testified that the Levingston Motel was a center for prostitution and drugs (Doc. 13-5, p. 166/242).

### 3. <u>Cummings was in possession of the cocaine in the motel room.</u>

Cummings contends the State failed to prove the defendant was in possession of the illegal drug and knowingly possessed the drug.

Actual possession means having an object in one's possession or on one's person in such a way as to have direct physical contact and control of the object. Constructive possession means having a relationship with an object such that it is subject to one's dominion and control. <u>State v. Perez</u>, 569 So.2d 609, 614 (La. Ct. App. 1990), writ denied, 575 So.2d 365 (La. 1991) (citing <u>State v. Sweeney</u>, 443 So.2d 522 (La. 1983)). A person may be in constructive possession of a controlled dangerous substance even though it is not in his actual physical custody if he willingly and knowingly shares

with another a right to control it.  State v. Perez, 569 So.2d 609, 614 (La. Ct. App. 1990), writ denied, 575 So.2d 365 (La. 1991) (citing State v. O'Neal, 501 So.2d 920 (La. App. 2d Cir. 1987), writ denied, 505 So.2d 1139 (La. 1987)); see also State v. Cann, 319 So.2d 396, 397 (La. 1975).  Guilty knowledge and intent may be inferred from the circumstances of the transaction.  State v. Perez, 569 So.2d 609, 614 (La. Ct. App. 1990), writ denied, 575 So.2d 365 (La. 1991) (citing State v. Edwards, 354 So.2d 1322 (La. 1978)).

The mere presence of a defendant in the area where a controlled dangerous substance is found, or mere association with the person found in possession of the controlled dangerous substance, is insufficient to constitute constructive possession. A suspect can have constructive possession if he jointly possesses drugs with a companion, and if he willfully and knowingly shares with his companion the right to control the drugs.  State v. Henry, 08-658 (La. App. 5 Cir. 10/27/09, 8), 27 So.3d 935, 942, writ denied, 2009-2485 (La. 4/23/10), 34 So.3d 269.

In State v. Henry, the State proved defendant constructively possessed cocaine with intent to distribute through testimony that: (1) Henry consented to the search of his motel room; (2) Henry admitted ownership of the drugs and paraphernalia found in the motel room to which he had a key; and (3) the quantity of drugs found in the room and the unexplained money found on defendant was consistent with intent to distribute.  See Henry, 27 So.3d 935.  In State v. Bush, 02-0247 (La. App. 5th Cir. 2002), 822 So.2d 859, 864-65, writ den., 2002-K-1887 (La. 2003), 836 So.2d 42, the State proved defendant had possession of drugs and a firearm where: (1) defendant

and another person were sitting within arm's length of a plate of crack cocaine and an open container of crack cocaine in a motel room; (2) defendant was in actual possession of almost two grams of cocaine; and (3) there was drug paraphernalia and a revolver within defendant's reach.  In <u>State v. Bacot</u>, 551 So.2d 29, 31 (La. App. 4th Cir. 1989), the defendant abandoned his car, leaving his drugs in the car.  The court held that, since the defendant was the only occupant of the car when he abandoned it, there was direct evidence of his constructive possession of the drugs.   In <u>State v Riley</u>, 587 So.2d 130, 133-34 (La. App. 2d Cir. 1990), the court found the defendant was in constructive possession of the cocaine found in his motel room where: (1) officers found 33 bags of cocaine in the room registered to defendant; (2) his wallet and driver's license were in the room; and (3) no one else was occupying the room.  In <u>State v. Perez</u>, 569 So.2d 609, 614-15 (La. App. 2d Cir. 1990), writ den. 575 So.2d 365 (La. 1991), the court found possession of marijuana by the defendant was proven where: (1) officers testified that defendant was in physical possession of the marijuana he was keeping in a warehouse; (2) defendant possessed the key to the warehouse; (3) defendant handled the bags of marijuana in front of officers; and (4) phone conversations showed defendant was aware that he possessed marijuana.   In <u>State v. Cazes</u>, 262 La. 202, 264 So.2d 8 (La. 1972), the Court found the defendant possessed the marijuana found in the motel room rented to him, of which he was the sole occupant.

In this case, the Court of Appeal found that, when the officers entered the motel room to execute the search warrant, Cummings was the only person in the room.  The

officers got a clear look at Cummings before he jumped out of the back window.  There was a block of cocaine on a plate with a knife, and 142 dime bags of cocaine in a pouch.  Cummings had over $ 1,000 in small denominations in his wallet.  The court held the State proved Cummings constructively possessed the cocaine found in the motel room.  That holding is supported by both the evidence and the case law cited above.

Although Cummings argues the motel room was rented out to Stacey Fluggent, the evidence shows Cummings was the only occupant of the room when it was searched and the drugs were found.  The fact that the room was not rented in Cummings's name does not indicate that he was not selling drugs.  Cummings also contends the fact that the dime bags of cocaine were found in a woman's coin purse indicates the room was occupied by a woman.  However, even if there were evidence that someone else had occupied the room with Cummings, that evidence would simply tend to show that Cummings jointly possessed the drugs with that person.  Either way, the evidence would show that Cummings possessed the drugs.

Moreover, although Cummings had enough pay stubs and pawn shop receipts to account for the money in his pockets, those receipts and stubs were a month old.  Even if the money was disregarded, there is evidence that Cummings was in possession of a large quantity of drugs that was packaged for sale, as well as a block of crack that was being cut up.  That evidence indicates an intent to distribute drugs.

Finally, Cummings contends that Townley improperly offered his expert opinion on an ultimate issue, in violation of La. C.E. art. 704, when he said this was definitely a case of possession with intent to distribute cocaine.  Mere violation of

evidentiary rules by the state trial court does not, by itself, invoke habeas corpus relief.  See Panzavecchia v. Wainwright, 658 F.2d 337, 340 (5th Cir. 1981).  The admission of improper evidence in a state criminal trial will constitute grounds for habeas relief only if fundamental fairness was prevented thereby.  What elevates the mistake to a constitutional plane is at least two-fold.  First, the mistake must be material in the sense of a crucial, critical, highly significant factor.  Second, it must have some state complicity in it.  See Shaw v. Estelle, 686 F.2d 273, 275 (5th Cir. 1982), cert. den., 459 U.S. 1215 (1983); see also Hills v. Henderson, 529 F.2d 397 (5th Cir. 1976), cert. den., 429 U.S. 850 (1976).

In this case, Lt. Townley's statement was given in response to a question as to whether, in his opinion, Lt. Townley believed the amount of cocaine found in the motel room was enough to indicate possession of cocaine with intent to distribute.  Lt. Townley testified the evidence indicated cocaine was being distributed.  Lt. Townley did not state that he believed Cummings had been possessing the cocaine or that Cummings was guilty.  Lt. Townley did not testify inappropriately as to an ultimate issue for the factfinder.  The jury was free to accept or reject Lt. Townley's expert opinion as to whether the cocaine in the motel room was for personal use or for distribution.  Cummings has not shown that his trial was rendered fundamentally unfair by Lt. Townley's testimony.

Therefore, there is sufficient evidence to support Cummings's conviction of possession of cocaine with intent to distribute.

### B.    Cummings's sentence is not constitutionally excessive.

Cummings next contends his life sentence as a fourth felony offender is constitutionally excessive under La. R.S. 15:529.1.  Cummings contends he filed a motion to depart downward from the mandated life sentence and the trial court failed to hold a contradictory hearing to determine whether the sentence was grossly disproportionate to the severity of the offense.    Cummings also argues his life sentence violates the Eighth Amendment.

Federal review of state convictions is confined to the narrow standards of due process.  Smith v. McCotter, 786 F.2d 697, 700 (5th Cir. 1986); Trussell v. Estelle, 699 F.2d 256, 259 (5th Cir.), cert. den., 464 U.S. 853 (1983).  In Haynes v. Butler, 825 F.2d 921, 923-24 (5th Cir. 1987), cert. den., 484 U.S. 1014 (1988), the court set forth the following standard by which a federal habeas court may review a state trial court's sentencing decision:

> Although wide discretion is accorded a state trial court's sentencing decision and claims arising out of that decision are not generally constitutionally cognizable, relief may be required where the petitioner is able to show that the sentence imposed exceeds or is outside the statutory limits, or is wholly unauthorized by law.  If a sentence is within the statutory limits, the petitioner must show that the sentencing decision was wholly devoid of discretion or amounts to an "arbitrary or capricious abuse of discretion," or that an error of law resulted in the improper exercise of the sentencer's discretion and thereby deprived the petitioner of his liberty.

La. R.S. 15:429.1 states in pertinent part:

(c)(ii) If the fourth felony and two of the prior felonies are felonies defined as a crime of violence under R.S. 14:2(B), a sex offense as defined in R.S. 15:540 et seq. when the victim is under the age of eighteen at the time of commission of the offense, or as a violation of the Uniform Controlled Dangerous Substances Law punishable by imprisonment for

ten years or more, or of any other crime punishable by imprisonment for twelve years or more, or any combination of such crimes, the person shall be imprisoned for the remainder of his natural life, without benefit of parole, probation, or suspension of sentence.

The penalties provided by La. R.S. 15:529.1 are not unconstitutional on their face. See State v. Wilson, 37,555 (La. App. 2 Cir. 11/6/03), 859 So.2d 957, 962, writ denied, 2003-3232 (La. 6/4/04), 876 So.2d 73 (citing State v. Pollard, 93-0660 (La. 10/20/94), 644 So.2d 370). The minimum sentences imposed on multiple offenders by the Habitual Offender Law are presumed to be constitutional. See Stevenson, 757 So.2d at 874 (citing State v. Johnson, 97-1906 (La. 3/4/98), 709 So.2d 672). The defendant bears the burden of rebutting this presumption. See Stevenson, 1999-2824 (La. App. 4 Cir. 3/15/00, 3), 757 So.2d 872, 874, writ denied, 2000-1061 (La. 11/17/00), 773 So.2d 734 (citing State v. Short, 96-2780 (La. App. 4 Cir. 11/18/98), 725 So.2d 23, writ denied, 99-0198 (La. 5/14/99), 745 So.2d 11).

A sentence is unconstitutionally excessive if it makes no measurable contribution to acceptable goals of punishment, is nothing more than the purposeless and needless imposition of pain and suffering, and/or is grossly out of proportion to the severity of the crime. See Stevenson, 757 So.2d at 874 (citing State v. Lobato, 603 So.2d 739 (La. 1992)). A court may only depart from a minimum sentence if there is clear and convincing evidence before it that rebuts the presumption. See Stevenson, 757 So.2d at 874 (citing Johnson, 709 So.2d at 676). To rebut the presumption that the mandatory minimum sentence is constitutional, the defendant must clearly and convincingly show that:

[he] is exceptional, which in this context means that because of unusual circumstances this defendant is a victim of the legislature's failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense, and the circumstances of the case.

See Johnson, 709 So.2d at 676.

Whenever a defendant is faced with a mandatory life sentence as a multiple offender, heightened scrutiny is triggered when determining if defendant falls within those "rare" circumstances where a downward departure is warranted. See Wilson, 859 So.2d at 962 (citing State v. Burns, 97-1553 (La. App. 4th Cir. 11/10/98) 723 So.2d 1013, writ denied, 98-3054 (La. 4/1/99), 741 So.2d 1282).

Cummings argues that, when imposing sentence after the habitual offender proceeding, the sentencing court simply stated that the life sentence was mandatory and did not make a determination of whether a downward departure was warranted. Cummings's allegation that the sentencing judge deviated from state procedural law does not state a constitutional claim cognizable under § 2254.

Moreover, Cummings's sentence was within the statutory limit set by La. R.S. 15:529.1, and is presumed to be constitutional. Cummings has not alleged "rare" circumstances where a downward departure is warranted. A non-violent criminal history (as Cummings argued on direct appeal) cannot be the major reason for a downward deviation. State v. Colton, 2007-252 (La. App. 3d Cir. 10/31/07), 968 So.3d 1239, 1243 (citing Johnson, 709 So.2d at 676 (a non-violent criminal history has already been factored into the minimum sentence under the Habitual offender Law)). Since a life sentence for a fourth felony offender has been held to be constitutional,

Cummings has not shown that his sentence is so grossly disproportionate to the offense as to be completely arbitrary and shocking.

Therefore, Cummings has not carried his burden of showing that his sentence is unconstitutionally excessive, and has not otherwise stated a constitutional claim for relief.  See Hensley v. Cain, 2008 WL 3365690, *7-*8 (E.D. La. 2008); Turner v. Rader, 2012 wl 6977191, *11-*12 (E.D. La. 2012).

C.    **Cummings was not denied his right to cross-examination.**

Cummings contends he was denied his right to cross-examine the crime lab analyst who analyzed the cocaine found in the motel room, in violation of La. R.S. 15:501.   Cummings also contends he was denied his right to cross-examine the confidential informant relied on by the police to secure the search warrant.

1.    **Crime lab analyst.**

All crime labs established by the laws of Louisiana or the United States are authorized to make proof of examination and analysis of physical evidence by the certificate of the person making the examination or analysis.  La. R.S. 15:499(A).  In all criminal cases, the certificate shall be received in evidence as prima facie proof of the facts shown therein, and as prima facie proof of proper custody of the physical evidence.  La. R.S. 15:500.  The defendant or his attorney may demand that the person making the examination or analysis testify by filing a written demand and serving it on the district attorney.  La. R.S. 15:501.

The State filed the certificate from the crime lab on March 2, 2009 (Doc. 13-1, p. 43/111).  There is no evidence that Defendant made a demand for the criminalist to be present at trial.

Cummings quotes <u>State v. Simmons</u>, 2010-1508 (La. App. 4th Cir. 5/18/11), 67 So.3d 525, for the proposition that the State had the burden to produce the criminalist at trial, anyway.  However, in that case (which fell under the old statute), the court held the Confrontation Clause was violated.  The State was held responsible for producing the criminalist because the defendant had demanded the criminalist's live testimony late, the demand was denied, and the defendant objected.  Since that case, the statute has been amended to allow longer periods of time for notice and demand.  In this case, Cummings did not demand live testimony from the criminalist, so the State could rely on the certificate.

This is an issue of state evidentiary law.  Cummings has not alleged or shown there was any problem with the crime lab's analysis, findings, or report.[1]  Cummings was not denied his right to cross-examination of the criminalist who tested the cocaine.  Instead, he failed to exercise it.  Cummings's trial was not rendered fundamentally unfair by admission of the certificate from the crime lab.

---

[1] It is noted that criminalist Bruce Stentz testified as to the results of the drug tests, although he did not personally analyze the cocaine or write the report.  Cummings could have questioned him as to any perceived irregularities with the analysis or the report, and did cross-examine him as to the lab's protocol and peer reviews.  Stentz testified that he had done a peer review on the report.

### 2.   <u>Confidential informant.</u>

Cummings also contends he was denied the right to confront and cross-examine the confidential informant ("CI").  Cummings complains that Agent Witham testified his CI had purchased drugs for him, which led to his obtaining a search warrant for the motel room occupied by Cummings.  Agent Witham refused to disclose the identity of his CI on cross-examination.  Cummings claims the CI was his accuser, so he should have been allowed to cross-examine him.

Cummings was not charged with selling cocaine to the CI.  Therefore, the CI was not his accuser and Cummings did not have the right to cross-examine him. Instead, Cummings was charged with possession with intent to distribute because he was found, by the police, in a motel room with a large amount of cocaine.  Therefore, Cummings was not denied his right to confront and cross-examine his accuser.

### D.   <u>Cummings did not have ineffective assistance of trial counsel, and was not denied his right to due process or a fair trial.</u>

Next, Cummings contends his trial counsel was ineffective and his conviction was obtained in violation of the Sixth Amendment.

To prevail on a habeas complaint of ineffective assistance of counsel, a complainant must meet the two-pronged test set forth by the Supreme Court in <u>Strickland v. Washington</u>, 466 U.S. 668, 691 (1984), and show: (1) his counsel's performance was deficient; and (2) the deficient performance prejudiced his defense. A defendant is prejudiced if there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different.  To make that determination, the court must examine the proceedings as a whole, giving

due consideration to the weight of the evidence supporting the verdict and evaluating the alleged failings of counsel in that total setting.  The court does not assess any alleged error in isolation.  In an examination of state proceedings pursuant to 28 U.S.C. § 2254, the court will not reject an adjudication on the merits unless the action by the state court is found to be contrary to, or an unreasonable application of, clearly established federal law, or the state court's determination of the facts is manifestly unreasonable in light of the evidence.  See Jones v. Cain, 227 F.3d 228, 230 (5th Cir. 2000), and cases cited therein.

1.  **Cummings's attorney did not err by failing to object to the "pen pack."**

First, Cummings contends his attorney erred in failing to object to the State's failure to authenticate the "pen pack," or the documentary evidence of Cummings's prior convictions introduced by the State at Cummings's habitual offender hearing. Cummings contends the documents introduced were hearsay.

Cummings contends the documents introduced by the State at his habitual offender proceeding were not properly authenticated by certification of the records custodian (Doc. 13-1, pp. 67-80/111).  Cummings complains the records custodian was not available for cross-examination.  However, there is an affidavit of certification by the records custodian attached to those records, in compliance with La.C.E. Rule 901 (Doc. 13-3, p. 80/111).  Therefore, it was not necessary to have the records custodian from the Department of Corrections testify.

The documentary evidence was introduced at Cummings's habitual offender hearing without objection (Doc. 13-6, p. 15/290).  However, contrary to Cummings's

assertions, the State introduced an expert in fingerprint analysis to compare the fingerprints attached to the documentation of each of Cummings's prior convictions. The fingerprint analysis expert testified that all four prior convictions bore the same fingerprints as those recently taken from Cummings by the expert (Doc. 13-6, pp. 8-10/290).  Since Cummings's prior convictions were verified as his by a fingerprint analysis expert, Cummings has not shown that his attorney erred by failing to object to the introduction of evidence of his prior convictions.

Cummings has not shown he had ineffective assistance of counsel at his habitual offender proceeding.

## 2. <u>Cummings's attorney did not err by failing to cross-examine the CI.</u>

Cummings alleges his attorney erred in failing to investigate the State's CI. Cummings's attorney asked the State's witnesses for the name of the CI, and they refused to provide it.

To prevail on an ineffective assistance claim based on uncalled witnesses, an applicant must name the witness, demonstrate that the witness would actually have testified, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable.  See <u>Alexander v. McCotter</u>, 775 F.2d 595, 602 (5th Cir. 1985).  Complaints of uncalled witnesses are not favored because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified are largely speculative.  See <u>Graves v. Cockrell</u>, 351 F.3d 143, 155 (5th Cir. 2003), amended in other part, 351 F.3d 156 (5th Cir. 2003), cert. den. (U.S. 2004) (citing <u>Buckelew v. United States</u>, 575 F.2d 515,

521 (5th Cir. 1978)); see also Boyd v. Estelle, 662 F.2d 388, 390 (5th Cir. 1981).

Unless a petitioner provides the court with affidavits (or similar matter) from the

alleged favorable witnesses suggesting what they would have testified to, claims of

ineffective assistance of counsel fail for lack of prejudice.  See Sayre v. Anderson, 238

F.3d 631, 636 (5th Cir. 2001) (citing Lockhart v. McCotter, 782 F.2d 1275, 1282 (5th

Cir.1986), cert. den., 479 U.S. 1030 (1987)).

Cummings only alleges that, had he been able to cross-examine the CI, he could

have found "possible" contradictions, participation, or impeachment information.

Cummings has not submitted an affidavit or other evidence from the CI to show what

he would have testified to and that his testimony would have been favorable to

Cummings.   Therefore, Cummings has not shown he had ineffective assistance of

counsel.

### 3.   Cummings's attorney did not err by failing to object to testimony from the criminalist.

Cummings contends his attorney erred in failing to object to testimony from

Stentz, the criminalist who testified as to the lab report.  Stentz did not actually test

the cocaine and write the lab report, but testified in place of the person who did.

Stentz testified that he did a peer review on the report.  Cummings has not alleged

any errors in the crime lab certificate, or prejudice arising from introduction of the

certificate and Stentz's testimony.

Pursuant to La. R.S. 15:449-501, the lab certificate could have been introduced

alone as prima facie evidence of its contents.  Stentz's testimony was not necessary

to verify the lab certificate, and it was offered to explain the lab procedures.  Although

Cummings alleges Stentz's testimony was inadmissible, it simply was not and he does not cite any authority for his argument.

Therefore, Cummings has not carried his burden of proving he had ineffective assistance of counsel with regard to Stentz's testimony.

### 4. Cummings's attorney did not err by failing to object to introduction of his prior convictions at his habitual offender hearing.

Next, Cummings contends his attorney erred by failing to object to use of his prior conviction for aggravated battery in the habitual offender proceeding, because there were no fingerprints attached to it. However, only Cummings's three prior controlled substance offense convictions were relied on in his habitual offender proceeding. Therefore, the lack of fingerprints attached to the aggravated battery conviction is irrelevant.

Cummings also contends his attorney should have objected to the State's use of his 2009 controlled substance conviction in his habitual offender proceeding because, he alleges, it was used in a previous habitual offender proceeding. Cummings contends the same conviction cannot be used in more than one habitual offender proceeding. Cummings does not offer any authority for this statement, nor can the Court find any. Service of a sentence as a habitual offender does not "wipe the habitual offender slate clean" and allow a felon to start over. That would run counter to the purpose of the habitual offender law, which is to deter and punish recidivism. See State v. Baker, 2006-2175 (La. 10/16/07), 970 So.2d 948, 955, cert. den., 555 U.S. 830 (2008) (citing State v. Everett, 2000-2998 (La. 5/14/02), 816 So.2d 1272, 1276).

Cummings did not have ineffective assistance of counsel at his habitual offender proceeding.

## VI.   Conclusion

Based on the foregoing, IT IS RECOMMENDED that Cummings's habeas petition be DENIED AND DISMISSED WITH PREJUDICE.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed.R.Civ.P. 72(b), parties aggrieved by this Report and Recommendation have fourteen (14) calendar days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.   No other briefs (such as supplemental objections, reply briefs, etc.) may be filed.   Providing a courtesy copy of the objection to the undersigned is neither required nor encouraged. Timely objections will be considered by the District Judge before a final ruling.

Failure to file written objections to the proposed findings, conclusions, and recommendations contained in this Report and Recommendation within fourteen (14) days from the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Judge, except upon grounds of plain error.

THUS DONE AND SIGNED in chambers in Alexandria, Louisiana, this 10th day of February, 2017.

Joseph H.L. Perez-Montes
United States Magistrate Judge